Title VII gives EEOC access to any information from any person relevant to the charge under investigation. Charges are to be construed with utmost liberality, as this Court held in BKB v. Maui Police Department, and relevance is to be construed under a generous standard that sweeps more broadly than it would at trial, as this Court said most recently in its second McLean decision, quoting the Supreme Court from Shell Oil. Against these standards, the District Court abused its discretion. Well, just to cut to the chase, it seems to me that the District Court essentially misunderstood the charge or ignored pieces of the charge. Absolutely. And it's not because the Court didn't see those words in the charge. It repeated the charge in full at the outset of the opinion. But then we believe that there were three analytical errors that entered into the Court's conclusion that it could just read certain words out of the charge. It appears to have been motivated by the legally erroneous view that EEOC can only investigate allegations that a charging party says he or she experienced personally, and then ignored the words in Bell's charge in which she says that she was not afforded opportunities to advance beyond the account executive position. And finally, acknowledging that she did allege women generally were not afforded opportunities to advance to top-level positions, the Court discounted that as a tip or a hunch, which can only be made sense of if you assume the Court was relying a level of factual certainty that the Supreme Court in Shell Oil said District Courts are not allowed to do. Finally, we think it's important that the Court also erred in its alternative argument on undue burden, saying that... Well, they're related because if the charge legitimately calls for an examination of promotional opportunities in management, then the undue burden that was described is not relevant. In other words, the burden has to do with the relevance, it seems to me. That reflects a standard that the District Court adopted here relying on a minority of circuits, and this Court has not explicitly stated what the standard is for assessing undue burden in the context of an EEOC subpoena, but we would urge this Court to follow the majority view, which is also consistent with the Supreme Court's latest explanation of how the subpoena process should work. In the 2017 McLean decision, the Supreme Court, in the context of talking about what is the appropriate level of review, the Court said that the first step in examining relevance is to look at the nature of the materials requested as they relate to the subject of the investigation. That's what I was trying to say. Right. Not very well. But the second step when you get to undue burden is just to look at what's being requested and how burdensome is it to produce it, not how relevant is it to the investigation, but simply are the materials copies of existing records? Are they, is the EEOC asking for the company to interview existing employees and create a new narrative? Is the company asking for the company to press a button in the computerized personnel records and generate a report that the computer, that these programs are able to generate? And how, so the type of records, and then how hard is it for the company to produce those records? And that's a completely distinct analysis that has nothing to do with how relevant it is. And in fact, if you read the Supreme Court's decision three times now, it's spoken over a 30 plus year period. Three times the Supreme Court has spoken on how to assess the relevance of information that the EEOC seeks in a subpoena. And each time it's talked about whether the evidence is or is not relevant, not how relevant, not how much does the EEOC need it, or how much will it advance? It's a yes or no question, relevant or not. So counsel, it appears to me that what the district court tried to do was to say, I don't think you get to enforce the subpoena. But if I'm wrong, here's the way that I would enforce it. And he's offered sort of an alternative. Now, do you have any, do you have any differences with the district court over the way that he was going to limit the subpoena if it was enforceable? Absolutely. The EEOC presented evidence below that the two human resource information systems that Genesware says it uses are both capable of producing what we've requested with a simple programming to ask it to generate that information. Genesware has not responded to that, either to say, number one, that it, unlike other employers, doesn't use the programs that way. And it has also not responded in any way to say that this is not an accurate assessment of what those programs do. I'm looking at page 14 of the district court's order, which is its last page, where the district court says, if required to decide the question of hardship, the court would hold the EEOC to its assertion. Did the district court mischaracterize what the EEOC conceded? Yes, it did. So what we, in an effort to address the question of how burdensome would it be for Genesware to produce this, EEOC, at the hearing that the court held, explained that most of the information could be generated through the computer. And so, therefore, the amount of effort it would take to fill in the missing pieces was very minimal. That was not a concession that we only needed what is generated by the computer or that we were happy to accept only what's generated by the computer, but very minimal effort on Genesware's part. So Genesware will be required to conduct searches of files and people's memories? For those minimal things, and again, if we look at the list, which the district court repeats in its order, I think at page 3, it lists what we're asking for. Our experience with the two programs that Genesware identified, PeopleSoft and I'm forgetting the name of the other one, we are familiar with those particular programs and they routinely capture this information. Employers routinely put this in. So the only time Genesware would have to consult paper records would be if whoever was entering the data had omitted somebody's information. So if we were not, we didn't have a social security number, it was just missing or the facility name and location, somehow they had typed it in the wrong way and somebody has to go back and correct it. That we assume would be very minimal, but it's crucial to us because we are looking for a complete list of information and we don't want random gaps for a witness who we may want to identify who now we can't because that one piece of information is missing for that one person. Let me ask you a question. I understand the important role of the EOC in investigating these complaints and the importance of the issues raised, but if you're a business person, how do you protect yourself from an employee going to the EOC and making just a bald assertion that it discriminates against women just to retaliate against their employer and make them spend a lot of money to respond to EEOC investigation? Who's the gatekeeper? Isn't that the job of a trial judge is to say this is too much, this business is being abused here? Or is it the EEOC's job? The Supreme Court said that it's not the job of the judge. That's clear. And what the Supreme Court said in Shell Oil is that that safeguard against employers is addressed by the fact that charges have to be signed under oath. And so if you look at the charge, which appears on page 221 of the excerpts of record, under penalty of perjury, the charging party says that the above is true and correct, not based on information and belief, not I think so or I hope so. Well, to a certain extent, the EEOC is a gatekeeper, too, because it doesn't investigate fully every charge. Absolutely, and I'm glad you said that. I mean, I used to do this kind of work on behalf of management when I was in practice, and there were plenty of charges of this sort that the EEOC did not take on. So how does that work? Does the record demonstrate what the EEOC did or considered before issuing the subpoena? Well, the record has a little bit of information that EEOC was privy to before issuing the subpoena, but primarily, just to step back for a minute, how this works, it's public knowledge that EEOC now has a formal system of assessing charges. We give them letters A, B, C, and a C charge is pretty much dismissed. A right to sue notice is sent to the charging party because we look at it, and on its face, it does not appear to allege a viable discrimination claim or something worth our time. B charges we investigate to the extent of our ability, and then we assess charges that appear to allege a more serious violation, an A charge, and that generally what captures our attention often is the fact that a charging party is describing widespread discrimination throughout the company, not just an isolated instance that happened to a single person. I think the point here, and I think Judge Graber hit it, is that's what the allegation is. Are there cases where there's that allegation, but the EEOC looks at them before requiring extensive discovery from a business and says there's no merit here, we're not going to pursue this? The first step is always to ask the company for their response, but from there, we can't really know what there is, evidence of discrimination, until we obtain the evidence. So there is no gatekeeper. If somebody makes an allegation, you will make an employer respond to discovery? It's not every instance, and the EEOC has to use its judgment, but there is no mechanism for a district judge to step in and say, I think this one wasn't worth the EEOC's time. And the Supreme Court, I think, in Shell Oil made that very clear, that that is not. What would the EEOC do? This is probably far afield, but this question, and you may not be able to answer it, but let's assume, this is a hypothetical, that someone comes in and says, I suffered race discrimination in that I was paid less than under the Equal Pay Act or I was not promoted or whatever, and this happens to a lot of other people too. And if the EEOC were to find that the individual charge was completely wrong, would it still go ahead and look at the class-wide charge, or would it take that into account as bearing on the credibility of a larger claim? There's no way to say as a matter, as a general rule, because individuals can be, there can be extenuating circumstances that explain action with respect to an individual, and they could still accurately have observed that the workplace overall reflects a discriminatory environment. The method for providing that employers are safe from lawsuits would be to allow the EEOC to do its job. If sometimes employers have to provide information, that is the system that Congress established, and the Supreme Court has made clear that there are limits on a court's discretion to deny access, to refuse to enforce a subpoena, and that limit is that we ask for information that isn't relevant to the allegations in the charge. Did you want to save some rebuttal time? We are down to two minutes. May it please the Court. My name is Jim Powell. I represent D.F. Jeanswear. The Court's decision in this case is reviewed under an abuse of discretion, and the District Court's opinion should be affirmed because of two things. Number one, the EEOC is not investigating Ms. Bell's claims of personal harm. So what? She also has class-wide claims here that vary clearly. She says females are not afforded the opportunity in top-level positions, top-level positions are male-dominated, and it goes on. So she says, I had a problem, but I'm not the only one. So her charge is much broader than what the District Court gave credit for. Your Honor, I respectfully disagree, and this is the reason. To start with, Judge Harpoo asked the question, is there a deference given to the District Court? And the answer is clearly yes. There's a statutory provision. That doesn't mean it isn't wrong sometimes. So why isn't this charge a class-wide charge? Because it does not allege an act, practice, policy, or procedure that raises a specter of discrimination. And that comes both from Title VII, the statutory provisions of Title VII, which requires that the person filing the charge is aggrieved. She is aggrieved. She's aggrieved because she says she was demoted and harassed personally, and she also has a class-wide charge that says that women are not hired into the top-level positions just like she wasn't. So I don't understand why you would say that she isn't aggrieved or that this isn't a class-wide charge. She's not aggrieved on the issue of promotions because the evidence is undisputed that she was demoted, that she made a claim of unequal pay. The evidence is undisputed based on the affidavit of Fran Millett that exerts a record of page 125 that Ms. Bell was promoted in 2007 to the position of a salesperson called account executive, and from 2007 until the date that she resigned in 2014, she never applied for, expressed an interest in, or was rejected for any promotion. Counsel, there's lots of reasons why someone might not apply for something. You might not apply for something if you thought it was a futile act. True, Your Honor, but there's no allegation in this charge. Well, it's just a very, very general charge. There's a pretty high level of abstraction. It is a very generalized statement that would be the equivalent of my company discriminates against blacks or women. That's about as general as it gets. Well, no, it isn't. It talks about top management level. Well, that's not quite so general. With all due respect, the record evidence shows that when she refers to top positions, she is speaking of her position as an account manager, because that is a top position in a sales organization, and that position is not a supervisory position, and it is not a managerial position. The EEOC subpoena takes the words supervisor, manager, executive. That is not an allegation made by Ms. Bell, and the district court in the factual record fully supports the district court's finding that Ms. Bell never held a position in a supervisory role, never sought a position to a supervisory role, never was denied a position as a promotion to a supervisory role. So that's why I say that she didn't allege personal harm on promotions. Well, you know, it's very interesting, because I have always understood the cases about personal harm to mean that you're just kind of on a frolicking detour. Nothing bad has ever happened to me, but I, you know, and I'm white, but I think you should go investigate what's happening to Latinos, because I think there may be a problem over there, sort of like an interloper. And rather than requiring that the person have exactly the same complaint as they're showing with regard to others, and so she's not an interloper in that way. She has personally alleged sex discrimination, and she's simply saying, and I'm not the only one. So why isn't that the right analysis? Because it does not, first of all, the statute says a person claiming to have aggrieved, and we believe that factually. Right, she has aggrieved. She says, I suffered discrimination. She certainly alleges discrimination with respect to being a demoted, and discrimination with regard to unequal pay. Those were investigated, or we provided, my client provided 1,500 pages of documents, about 14 account executives, and their complete employment history as to those issues. And there's no allegation by the commission that what our client has provided to the commission on Ms. Bales' personal claims is indeficient whatsoever. What the commission is claiming is that they want to investigate the company's promotion practice. The class-wide charges. Correct. Don't you think, though, if there's a glass ceiling and that women aren't promoted to top positions, that that might affect the ability of women in lower positions to gain advancement, and it might demonstrate an attitude within the employer as a whole of not treating the genders equally? The notion of glass ceiling is never mentioned by Ms. Bales, but more importantly, what Ms. Bales does allege is the top positions are male-dominated, and the factual record demonstrates that she is talking about the account executive positions because there were 14 of them, and then for the time period the commission asked, 13 of them were men. She is factually correct that it was male-dominated. But being male-dominated does not generate a claim, a practice. The commission is not investigating. Excuse me. But who determines who the account executives are? Aren't they the people above them? At some point, certainly. But this is so. And the second point I would make is the commission's own regulations, 29 CFR Section 1601.12, talks about what the charge must provide. Routine information about name and address, telephone number, making the charge, name and address of the employee. But number three, a clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practice. And she does not identify a practice or a procedure which this court has addressed in the McLean case, in the Federal Express case, which did raise issues of systemic discrimination. In the McLean case, that involved a strength test, which alleged had a disparate impact, and the allegation in the charge was disparate impact on blacks and Latinos. Counsel, what decision of ours do you think is sort of the strongest for you that says that the district court gets to be a gatekeeper here and gets to second-guess the EEOC's judgment about what needs to be investigated? I will quote the Supreme Court's decision in McLean, Company Inc. v. EEOC at 137 Supreme Court, page 1169. A district court deciding whether evidence is relevant under Title VII need not defer to the EEOC's decision on that score. So I take categorical opposition to counsel from the EEOC saying there's any deference given whatsoever to the EEOC's decision on whether it is relevant or not. The Supreme Court has said that the district court makes that decision. The district court, excuse me, the Supreme Court went on to make clear that there are two issues which have to be reviewed under an abuse of discretion standard because the district court is making decisions on very fact-specific issues that are incapable of something other than generalized notions. Could I just read the rest of that sentence from McLean? A district court deciding whether evidence is relevant need not defer to the EEOC. It must simply answer the question cognizant of the agency's broad authority to seek and obtain evidence. So it seems to me that a lot of your argument is saying, no, no, it's really kind of a narrow authority. If they didn't put the date when other women didn't get their promotion or whatever, it's no good. And it just seems to me that your argument runs counter to that sort of sense of the breadth of the subpoena power. The Supreme Court has made clear and the district court applied the correct standard. Under an abuse of discretion review, the EEOC would have to say that the Supreme Court applied the wrong legal standard and there's no allegation by the commission that in with regard to the issue of the relevance of the information that the district court applied the wrong legal standard. Then the court went through and even articulated what the standard was. Didn't the district judge really basically say I don't believe these systemic allegations in here? So I forgot the exact phrase he used of them, but he kind of made light of them and limited the discovery to her personal harm. I would suggest to your honor that the court did not say whether the court believed or did not believe. The court's actual statement on page 10 of the record and page 10 of the court's opinion said the crux of this court's inquiry is whether Bell's charge of demotion is enough for a company-wide and nationwide subpoena for discriminatory promotion. A discriminatory practice not affecting the charging party. So the district court did not assess whether Ms. Bell had a valid claim of promotion or demotion. Her personal one, but he did kind of disregard the systemic argument. I mean, clearly she alleges females are not afforded the opportunity in top-level positions. Top-level positions are male-dominated. I believe I and a class of females have been discriminated against because of sex. Did he allow the subpoena to seek documents relevant to that portion of the claim? Your honor, I would point to the end of the last paragraph on page 10. As the district court said that even under a generous reading of the relevance, and that he and the district court has set forth in the prior opinion, that he understood that the issue of relevance is not the relevance of what is admissible at trial. He quoted the correct standard of a generous reading. But he kept referring to this charge as a one-off charge. Yes. As if it didn't even include these class claims. And he just says, well, because the class is broader than the one-off, I'm not going to give anything about the class. I would respectfully say the district court's opinion or statement about a one-off charge of discrimination is accurate because it is an accurate description of this is a charge of demotion. Well, it's always true that the individual has a one-off charge. They're one person. And so to follow the district court's logic, it would be basically there would never be class-wide subpoenas permitted. I would respectfully disagree because this court in the McLean case itself found, and in FedEx's case found, that not only did the individual who made the claim have a personal issue at stake, but that the charge itself involved a cognitive test in one case and a basic skills test in another case. And those are policies or practice which do implicate class-wide discrimination. And, in fact, I believe it was in the FedEx case where the allegation was it was a pattern in practice of discrimination. And I will go back to the starting point of the statute of the EEOC, of Title VII, that there must be a charge filed by a person claiming to be aggrieved. And then I go to the EEOC's own regulations that the person making the claim must make a written statement sufficiently precise, those are the words of the commission's regulations, to identify the parties and describe generally the actions or practices complained of, stating that women in general are not afforded opportunities. It does not identify an action or a practice. That is, and we believe the district court followed that very clearly in this case. The cost that you all provided the district judge for compliance with the subpoena was $10,000? On my own record, Your Honor, I forget, but that would be approximately true. Haven't they spent more than that? I mean, I'm mindful of business expenses, but haven't they spent more than that fighting the subpoena? Substantially more. But the problem was this. We provided the EEOC all relevant information to the charge made by Ms. Bail. And there's no claim of that charge that we provided any information or failed to provide information that was not necessary for that charge. And I apologize my time has expired. Thank you, counsel. We appreciate your argument. And I believe you have some rebuttal time remaining. Let me briefly address Mr. Powell spent a fair amount of time trying to argue that the charging party has to allege some particular discriminatory practice like the screening test that was at issue in FedEx. And that is clearly not the case. Somebody could just allege that discrimination is happening, and it could be because there's a climate of preferring some categories of individuals over others. But the court did ask me when I was here before if there's other evidence, what evidence we had when we issued the subpoena. Very little at that time, but during the subpoena enforcement action, Jeanswear submitted other evidence, including Judge Tucci's denial of summary judgment, in which he denied summary judgment on Title VII in part because of the direct evidence of the person who was two levels above Bell in the supervisory, who had said that the reason we can't keep Bell in that position and need to put a man there is because it involves selling workwear, and we need a man doing that job. And Judge Tucci thought that seemed direct evidence of a discrimination, which we believe could also explain why women are not afforded opportunities to advance. With respect to the definition of top-level positions, I'd just like to point out that in opposing the subpoena below, Jeanswear took the position that account executive is not a top-level position, and they did that at excerpts of record page 110. And then they reversed that on appeal and tried to argue that, of course, that's what she meant when she said top-level, exact opposite of what they said below. We explain in our brief why that argument simply doesn't make sense. I very quickly need to address one error in the district court's opinion that I want to make sure this court recognizes EOC's position. On page 12, the court describes the time scope of the subpoena as asking for information from January 1, 2012, to August 2015, which was the month we issued the subpoena. And that is not what the subpoena says. It asks for information to present. And we mean that literally. If we meant it the same date as the subpoena was issued, we would have put that date in there. Very important that the company give us timely information that's not stale and outdated, and also that the company not be rewarded for dragging its feet by having to give only the same amount of information it would have given had it responded promptly. Thank you, counsel. The case just argued is submitted, and we appreciate very much the helpful comments from both of you.
judges: Graber, Bybee, Harpool